# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY COBOS, | 1:10-cv-00709 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court in 1986 of first degree murder. Petitioner is serving an indeterminate sentence of twenty-five years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he challenges a September 10, 2008, decision of the Board of Parole Hearings (Board) denying parole. Petitioner claims the Board violated his due process rights by finding him unsuitable for parole when no

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

1  evidence demonstrated he posed an unreasonable risk of danger to society.  He claims the Board
2  erroneously stated the psychological evaluation rated him a moderate risk of danger to reoffend
3  when in actuality the evaluation rated him in the low range.

4        Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Los
5  Angeles County Superior Court on January 21, 2009.  The petition was denied in a reasoned
6  decision on April 2, 2009.  Petitioner then filed a state habeas petition in the California Court of
7  Appeal, Second Appellate District, on June 3, 2009.  The petition was summarily denied on
8  June 16, 2009.  He next filed a habeas petition on August 20, 2009, in the California Supreme
9  Court.  The petition was summarily denied on February 10, 2010.

10        Petitioner filed the instant federal petition for writ of habeas corpus on April 19, 2010.
11  Respondent filed an answer to the petition on July 30, 2010.  Petitioner filed a traverse on
12  August 31, 2010.

### STATEMENT OF FACTS[2]

14        On December 1, 1985, Petitioner's friends murdered Martin Osuna's girlfriend.  On
15  December 6, 1985, Petitioner talked with his friends regarding their belief that Osuna was
16  planning to retaliate against them for killing his girlfriend.  In response, Petitioner and his friends
17  planned to kill Osuna.  Later that day, Petitioner and one of his co-defendants brought Osuna to
18  Petitioner's home.  An argument ensued and Osuna left.  Petitioner stated Osuna was getting
19  away and told a co-defendant to go get him.  Petitioner and the co-defendants pursued Osuna so
20  that he would not leave.  Petitioner and his friends got into a car with Petitioner driving, Osuna in
21  the passenger seat, and the co-defendants in the back seat.  Petitioner stopped the car and one of
22  his co-defendants engaged in a physical altercation with Osuna.  Petitioner then grabbed Osuna
23  by the legs and began stabbing him repeatedly in the back and buttocks.  Osuna was stabbed
24  approximately 37 times, which resulted in his death.  Petitioner and the others removed Osuna's

---

[2] This information is taken from the summary of facts set forth in a prior habeas case filed by Petitioner challenging a denial of parole.  See Cobos v. Mendoza-Powers, Case No. 1:07-CV-0072 AWI DLB HC.  This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244 (9th Cir.1992); see also MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

bloody body from the car.  Petitioner told a co-defendant to "be sure he's dead," and the co-defendant repeatedly stabbed Osuna in the neck.  Petitioner subsequently removed the victim's shirt and jacket, and joked about how many holes were in the jacket.  The victim's body was covered in drapes taken from Petitioner's home and dumped in an isolated area in the mountains.  Petitioner subsequently instructed a co-defendant to dismantle the car so that any evidence would be destroyed.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an

1  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
2  of the United States" or "resulted in a decision that was based on an unreasonable determination
3  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
4  § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

5  "[A] federal court may not issue the writ simply because the court concludes in its
6  independent judgment that the relevant state court decision applied clearly established federal
7  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
8  A federal habeas court making the "unreasonable application" inquiry should ask whether the
9  state court's application of clearly established federal law was "objectively unreasonable." Id. at
10 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to
11 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
12 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
13 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
14 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
15 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

16 II.    Review of Petition

17         There is no independent right to parole under the United States Constitution; rather, the
18 right exists and is created by the substantive state law which defines the parole scheme. Hayward
19 v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482
20 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May
21 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174
22 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).
23 "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state
24 statutes may create liberty interests in parole release that are entitled to protection under the Due
25 Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

26         In California, the Board of Parole Hearings' determination of whether an inmate is
27 suitable for parole is controlled by the following regulations:
28         (a) General. The panel shall first determine whether the life prisoner is suitable for

release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

 (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

 (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

 (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
 (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
 (C) The victim was abused, defiled or mutilated during or after the offense.
 (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

 (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

 (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

 (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

 (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

 (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

 (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a

5

juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v.

1 Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

2 The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. Last Reasoned State Court Decision

In the last reasoned decision, the Los Angeles County Superior Court rejected Petitioner's claims as follows:

> The Board found petitioner unsuitable for parole after a parole consideration hearing held on September 10, 2008. Petitioner was denied parole for two years. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board relied on several factors, including the commitment offense.

The nature of the commitment offense may indicate that an inmate is unsuitable for parole when the offense is especially heinous, atrocious or cruel. [Citations.] In some cases, "the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." [Citations.] There is some evidence to support the Board's conclusion the commitment offense was especially heinous based on the fact that the manner in which it was carried out demonstrated an exceptionally callous disregard for human suffering. [Citation.] This means that "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of that offense." [Citation.] An offense is more aggravated or violent when it involves severe trauma, "as where death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim." [Citation.] In this case, petitioner stabbed the victim with a knife numerous times. He stated that he did not know at what point the victim died. In fact, he asked his crime partner to continue to stab the victim while he went to clean up. Because the murder involved severe trauma, it is some evidence that the commitment offense was especially heinous.

The gravity of the commitment offense is relevant if it is indicative of "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." [Citation.] There must be a "rational nexus" between the gravity of the commitment offense and petitioner's current dangerousness. [Citation.] While an implication of dangerousness can be drawn from the fact that a prisoner committed an especially heinous offense, "the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-conviction history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." [Citation.]

In this case there is some evidence that petitioner continues to be an unreasonable risk of danger to society based on his psychological evaluation. The psychologist ranked petitioner as a moderate risk of recidivism and future violence. The evaluator noted that petitioner produced elevations on tests for such items as "lack of remorse or guilt, callousness, lack of empathy, grandiose sense of self-worth, need for stimulation/proneness to boredom, parasitic lifestyle, poor behavioral control, lack of realistic long-term goals, impulsivity, irresponsibility, criminal versatility, failure to accept responsibility for own actions." [Citation.] Overall, the biggest concern for both the psychological examiner and Board was that petitioner continues to minimize the commitment offense. This indicates that he has not gained insight into the nature and magnitude of the offense, which is relevant to the determination of parole suitability. [Citation.] For example, petitioner claimed that his attack on the victim lasted only fifteen seconds, which the Board found unlikely given the extent of the victim's injuries. Petitioner also appeared to blame others for most of his fourteen CDC 115s. The psychologist stated, "The inmate's unwillingness to fully accept his action in the controlling offense and his apparent lack of remorse regarding his actions increase the chance he may engage in negative behavior if released into the community." [Citation.] Thus, his lack of remorse is some evidence that he remains an unreasonable risk of danger to society.

The Board found that petitioner has made some gains in prison. He has been discipline-free since 1993, although prior to that time, he had several CDC 115s for violence and alcohol. Additionally, petitioner has adequate plans for parole. However, because he has not gained understanding of the issues that led to his atrocious

commitment offense, he remains an unreasonable risk of danger to society. (See Resp't's Ex. 2.)

### B. 2008 Board Hearing

The Board determined Petitioner was unsuitable for parole based on the circumstances of the commitment offense, institutional behavior, and psychological evaluation.

The Board determined that the commitment offense was especially heinous, atrocious and cruel. Cal. Code Regs., tit. 15, § 2402(c)(1). The facts of the crime speak for themselves. Petitioner attacked the victim from behind, stabbing him 37 times. When he was finished, he directed a co-defendant to continue stabbing the victim to be sure the victim was dead while Petitioner went to clean up. Petitioner took the victim's shirt and jacket off and joked about the numerous holes in the jacket. Later, Petitioner directed his co-defendants to dispose of the vehicle in which the victim was killed. The state court reasonably determined that some evidence supported the Board's finding that the commitment offense was especially heinous, atrocious, or cruel.

The Board also noted that Petitioner had an extensive history of negative behavior in prison. Cal. Code Regs., tit. 15, § 2402(c)(6). Petitioner sustained fourteen CDC-115 serious rules violations, and several of them were for violent behavior. Although the last one occurred in 1993, they did provide evidence of continuing negative behavior after the commitment offense.

The Board also considered the most recent psychological evaluation. Petitioner argues the Board mistakenly stated the psychologist concluded he was a moderate risk of danger to society when the psychologist actually determined Petitioner rated in the low range. While this may be true, the Board specifically went over the psychological evaluation with Petitioner and highlighted troubling areas. In particular, the Board stated:

> Then with regard to the Hare Psychopathy Checklist, which is one of the devices, it says that you were in the low range. However, it goes on to say he produced elevations on items such as lack of remorse or guilt, callousness, lack of empathy, grandiose sense of self-worth, need for stimulation/proneness to boredom, parasitic lifestyle, poor behavioral control, lack of realistic long-term goals, impulsivity, irresponsibility, criminal versatility, failure to accept responsibility for own actions. And so anyway, it says that you had an elevated score in that area. With regard to the HCP-20 assessment of violence, you had an elevated score with regard to - - or because of the controlling offense and relationship instability and other factors. The doctor goes and talks about clinical and the more

9

>current and dynamic domain of risk assessment and that you produced elevated scores in that area.  Then as for the management of future risk, you produced an elevated score in certain areas. . . .
>
>The doctor said it's the opinion of this examiner that the inmate is currently minimizing his involvement in the controlling offense.  He appeared to blame the victim for the assault and he noted he was afraid of the victim and believed that the victim was going to kill him and, therefore, he aggressed toward the victim.  The records indicated the victim posed no threat at the time he was murdered by the inmate and the inmate's codefendant.  The inmate's unwillingness to fully accept his action in the controlling offense and his apparent lack of remorse regarding his actions increase the chance he may engage in negative behavior if released into the community. . . .
>
>As to alcohol and drugs . . . . The examiner opines that the inmate is a moderate risk to relapse if placed in the community at this time. . . .
>
>It's the opinion of this examiner that the inmate has not fully grasped the underlying factors that led him to engage in such violent action on the day of the controlling offense. . . .
>
>Weapon possession and a willingness to use violence to solve disputes are going to be triggers for [Petitioner] that will potentially lead him to engage in other acts of violence if they are not addressed.  It's the opinion of this examiner that the inmate has not fully addressed these two issues at this time.

(See Board Transcript at 81-84.)

In light of these concerns of the examining psychologist, there was some evidence to support the Board's determination that the psychological evaluation was indicative of a risk of danger.  The state court's finding that some evidence supported the Board's finding was not unreasonable.

The Board also considered factors in support of suitability.  Petitioner was commended for his clean disciplinary record since 1993.  He was commended for his parole plans, work record, and programming.  Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  In light of the circumstances of Petitioner's commitment offense, his institutional behavior, and the negative aspects of the psychological evaluation, the state courts' determination that there was some evidence to support the Board's 2008 decision was not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

///

///

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 6, 2010**                          /s/ Sandra M. Snyder
                                                      UNITED STATES MAGISTRATE JUDGE